UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TIMOTHY JAMES MURPHY,<br>Plaintiff,<br><br>v.<br><br>CAPTAIN PETER PASCUCCI,<br>LIEUTENANT SCOTT MELLO,<br>CORRECTIONS OFFICER MICHAEL AMARAL<br>MARY FORTUNE, Mental Health Professional, and<br>WELLPATH MEDICAL,<br>Defendants. | Civ. Act. No.<br>20-40043-TSH |

ORDER
August 30, 2022

**HILLMAN, S.J.**

### Background

Plaintiff, Timothy James Murphy ("Murphy"), proceeding pro se, has filed a second amended complaint (Docket No. 59)("Instant Complaint") against the following corrections officers employed at Old Colony Correctional Facility ("Old Colony Facility"): Captain Peter Pascucci ("Capt. Pascucci"), Lieutenant Scott Mello ("Lt. Mello"), Corrections Officer Michael Amaral ("C.O. Amaral, and together with Capt. Pascucci and Lt. Mello, the "Old Colony Facility Defendants"). He has also file claims against Mary Fortune ("Fortune"), a social worker employed by Wellpath Medical LLC ("Wellpath"), and Wellpath (Wellpath together with Fortune, the "Wellpath Defendants").

By Order dated September 21, 2021 (Docket No. 54)("Prior Order"), the Court dismissed Murphy's first amended complaint which included claims against these Defendants and others

under 28 U.S.C. § 1983 for violation of his Eighth Amendment rights.[1] The Court dismissed the amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim and adopted the reasoning set forth in the Defendants' respective memoranda supporting their motions to dismiss. More specifically, the first amended complaint was dismissed against the Old Colony Facility Defendants because Murphy had failed to allege sufficient facts which would establish that they were deliberately indifferent to his health or safety. The amended complaint was dismissed against the Wellpath Defendants for failure to state plausible claims that that they violated his Eighth Amendment rights by denying him adequate medical care and subjecting him to cruel and unusual punishment.[2] The dismissals were without prejudice and Murphy was granted one last opportunity to amend his complaint to state plausible claims against the Defendants. Murphy filed the Instant Complaint in response to the Court's Prior Order. The Defendants have filed motions to dismiss the further amended complaint on the grounds that Murphy has failed to cure the deficiencies identified by the Court in that Prior Order, that is, the Instant Complaint fails to state plausible claims against them for violation of his Eighth Amendment rights. For the reasons set forth below, Peter Pascucci, Scott Mello, And Michael Amaral's Motion To Dismiss Further Amended Complaint (Docket No. 60), and Medical Defendants' Motion To Dismiss Plaintiff's Second Amended Complaint (Docket No. 62) are *granted*.

---

[1] In filing his first amended complaint, Murphy, who is proceeding *pro se*, referred to the initial complaint as still part of the record, however, in that pleading (the first amended complaint), he included both the legal and factual bases for his claims against the defendants named therein. In the Instant Complaint, he does not assert any legal claims gains the named defendants, Instead, the pleading contains only additional factual allegations and legal arguments regarding the viability of his claims. Because Murphy is proceeding pro se, the Court will construe his pleadings liberally and assume that in the Instant Complaint, he is asserting the same legal claims against the Defendants that he asserted in the prior pleadings, that is, he is alleging claims against them under Section 1983 for violation of his Eighth Amendment right to be free from cruel and unusual punishment.

[2] The Facility Defendants and the Wellpath Defendants had also argued that the claims against them should be dismissed for failure to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a) *et seq.* Since failure to exhaust administrative remedies under the PLRA is an affirmative defense, the Court did not address whether Murphy's action should be dismissed for failure to affirmatively plead that he had complied with the PLRA's exhaustion requirements.

**Standard of Review**

To survive a 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must evince the requisite factual detail to establish a *plausible* claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). When deciding a motion to dismiss, the court is obligated to accept all the facts alleged in the complaint as true, however, plaintiff still carries the burden of directing the court to the appropriate substantive law that entitles it to the relief it seeks. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007); *Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000).

**Facts**

Murphy is a state prisoner in custody of the Department of Correction ("DOC"). At all times relevant to this action, he was housed at the Old Colony Facility.  Wellpath is a privately owned company that is under contract with DOC to provide comprehensive medical, dental, mental health and forensic mental health services for inmates incarcerated in DOC facilities. Fortune is a social worker who was employed by Wellpath at the Old Colony Facility in December 2019. Capt. Pascucci, Lt. Mello and C.O. Amaral were employed as corrections officers at Old Colony Facility during the relevant time-period.[3]

---

[3] The Court has previously dismissed C.O. Yard (it remains unclear whether "Yard" is the corrections officers name, or whether that is the location to which the officer was assigned), unnamed members of the Inner Perimeter Security Team ("IPS"), unknown officers and members of the medical staff for failure to effect timely service.  Although they are not named in the caption of the pleading, from the allegations and arguments Murphy makes in the Instant Complaint, it appears that he is attempting to establish that he has asserted viable claims against them.  However, contrary to what he argues in the Instant Complaint, it is clear that Murphy has not served C.O. Yard or any other previously unnamed defendant with any of the operative pleadings. Moreover, given the amount of time that has passed, his asserted reason for not having done so (he went to the hospital and was kept in confinement for a brief period) do not establish just cause. Additionally, Murphy asserts factual allegations against "Officer Jacob Rose" who is not named as a defendant in the Instant Complaint or any of the prior pleadings, and Murphy has not filed proof of service regarding Officer Rose (nor has he requested that a summons issue as to this individual). Simply put, Officer Yard, Officer Jacob Rose and the unnamed defendants are not parties to this action and the Court will not include any factual allegations or address any legal claims Murphy asserts against them.

The Court notes that while Murphy has included new factual allegations in the Instant Complaint, he has not asserted any additional facts against either the Colony Facility Defendants or the Wellpath Defendant in support of his claims against them. Instead, he asserts facts against individuals who are not partis to this action, *see supra* note 3, and about incidents which are not related to the legal claims he has asserted against any of these Defendants. In its Prior Order, the Court has set forth the facts alleged in the first amended complaint and for purposes of this Order, the Court will adopt those same facts.

## Discussion

### The Old Colony Facility Defendants

The Old Colony Facility Defendants seek to dismiss the Instant Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief may be granted. In support of their motion, these Defendant point out that in its Prior Order, the Court found that Murphy's first amended complaint failed to state plausible claims against them— they then argue that the Instant Complaint does not contain any additional factual or legal allegations that would cure the deficiencies of that prior pleading. The Court agrees. Because the Instant Complaint[4], even when read together with Murphy's prior pleadings, fails to state plausible claims against these Defendants, their motion to dismiss is *granted*.

### The Wellpath Defendants

The Wellpath Defendants seek dismissal of Murphy's claims pursuant to Rule 12(b)(6) on the grounds that he has failed to state plausible claims that they violated his Eight

---

[4] While the instant complaint does include some additional factual allegations, in this so-called "pleading" Murphy primarily summarizes the allegations made in his prior pleadings, informs the Court of incidents that have occurred since he originally filed this action in 2020, outlines his need for further discovery, and makes legal argument as to why this action should go forward. In other words, the Instant Complaint is more akin to a memorandum in support of a motion for reconsideration than the amended pleading he was ordered to file.

Amendment rights by denying him adequate medical care and subjecting him to cruel and unusual punishment. More specifically, the Wellpath Defendants assert that Murphy has failed to: (i) plead sufficient facts to state a plausible claim that Fortune acted with deliberate indifference, denied him medical care and subjected him to cruel and unusual punishment in violation of the Eighth Amendment, and (ii) Murphy had not alleged *any* facts against Wellpath, and Wellpath cannot be sued under Section 1983 under a theory of respondeat superior.

*Facts*

Following is a summary of the factual allegations which form the bases of Murphy's claims that the Wellpath Defendants violated his Eighth Amendment rights by failing to protect him and by failing to provide him with adequate medical care (as previously noted, a more detailed recitation of the facts is contained in the Court's Prior Order). On December 11, 2019, Murphy reported to Fortune, a social worker, that he wanted a change regarding his cellmate because he thought there was going to be trouble and he didn't want to hurt anyone. Fortune informed Murphy that she would report his concerns to the unit correction officer and shift commander and after the completion of their meeting, she did so. That same evening, Murphy had a physical altercation with Richard Vinton ("Vinton"), an inmate who was an associate of Murphy's. On December 11, 2019, Murphy was sent to Morton Hospital for treatment of injuries he had sustained during his altercation with Vinton. The hospital took images of Murphy's injuries (either CT scans or X-Rays) which indicated that Murphy had suffered broken ribs and broken bones in his hand. The hospital recommended follow-up visits. Upon his return to the Old Colony Facility, Murphy was placed in a medical recuperation unit for a period of eight or nine days. Shortly thereafter, Murphy was transferred to the Massachusetts Correctional Institute at Concord, MA ("MCI-Concord"). Follow up imaging conducted at MCI-Concord on

January 20, 2020 was negative for fractures. On January 24, 2020, Murphy was sent to Boston Medical Center for further follow-up, but medical records were not sent with Murphy to the appointment and therefore, an additional follow-up appointment was necessary. That follow up appointment took place two weeks later. Because the January 20th images were negative for fractures, Wellpath stopped treating Murphy.

Murphy was seen at the prison medical facility in April and May 2020 for a complaint of chest pains. A CT scan was conducted on the first occasion and an EKG on the second. As a result, he was prescribed an inhaler and Tylenol.  From January 2020 through April 2020, Murphy had follow-up CT scans and X-rays which according to him, have shown conflicting results as to whether he had rib fractures.

### *Whether the Actions of Fortune and/or Wellpath Constituted a Violation of Murphy's Eighth Amendment Rights as the Result of Their Deliberate Indifference to his Health and Safety*

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *See Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475 (1993).  In accordance with the Amendment, prison officials must provide humane conditions of confinement, including ensuring that inmates receive adequate medical care. More specifically,

> [t]he Eighth Amendment … protects incarcerated people from state corrections officials' 'deliberate indifference to serious medical needs.' There are both objective and subjective components to a claim for this type of Eighth Amendment violation.
> The objective component requires the plaintiff to prove that she has a medical need 'that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' … .
> The subjective component requires the plaintiff to show that prison officials, in treating the plaintiff's medical needs, possessed a sufficiently culpable state of mind. That state of mind is one that amounts to deliberate indifference to the claimant's health or safety.

> The "obvious case" that would meet this 'deliberate indifference' standard 'would be a denial of needed medical treatment in order to punish the inmate.' But, deliberate indifference may also take the form of 'wanton' or criminal recklessness in the treatment afforded.
>
> To show such a state of mind, the plaintiff must provide evidence that the defendant had 'actual knowledge of impending harm, easily preventable,' and yet failed to take the steps that would have easily prevented that harm. Such a showing may be made by demonstrating that the defendant provided medical care that was 'so inadequate as to shock the conscience,', or, put otherwise, that was 'so clearly inadequate as to amount to a refusal to provide essential care.'

*Zingg v. Groblewski*, 907 F.3d 630, 634–35 (1st Cir. 2018)(internal citations and citations to quoted cases omitted).

> The standard encompasses a narrow band of conduct: subpar care amounting to negligence or even malpractice does not give rise to a constitutional claim, rather, the treatment provided must have been so inadequate as to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. We have concluded that [d]eliberate indifference in this context may be shown by the denial of needed care as punishment and by decisions about medical care made recklessly with actual knowledge of impending harm, easily preventable.

*Leavitt v. Corr. Med. Servs., Inc.*, 645 F.3d 484, 498 (1st Cir. 2011)(internal citations, citation to quoted cases and internal quotations omitted).

The Eighth Amendment also imposes a duty on prison officials to:

> take reasonable measures to guarantee the safety of the inmates. In particular, ... prison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.
>
> However, not every injury suffered by one prisoner at the hands of another ... translates into constitutional liability for prison officials responsible for the victim's safety. The test for a violation of the Eighth Amendment has both an objective and a subjective component. First, the deprivation alleged must be, objectively, sufficiently serious, ... [and] [f]or a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the prison official must have had a state of mind ... of deliberate indifference to inmate health or safety.
>
> The subjective standard of deliberate indifference is satisfied only when the prison official both knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. This standard is analogous to the standard for criminal recklessness.

7

*Facey v. Dickhaut*, 91 F. Supp. 3d 12, 30–31 (D. Mass. 2014)(internal citations, citations to quoted cases and internal quotation marks omitted).

The Court will first address Murphy's claim that the Wellpath Defendants were deliberately indifferent to his serous medical needs.[5] As argued by the Wellpath Defendants, Murphy's allegations fall far short of establishing a plausible claim that any Wellpath employee failed to address his serious medical needs. On the contrary, after the altercation with Vinton, Murphy was sent to an outside hospital for treatment and has since had multiple follow up X-Rays and CT scans. *At best*, Murphy's allegations amount to a disagreement as to the proper course of his medical treatment which is not sufficient to state a plausible Section 1983 claim for violation of his Eighth Amendment rights for deliberate indifference to his serious medical needs. *See Watson v. Caton*, 984 F.2d 537, 540 (1st Cir. 1993). I also find that dismissal against Wellpath is warranted because as argued by it in its supporting memorandum, Murphy's operative pleadings fail to allege *any* facts against Wellpath that would support a plausible claim against it. Moreover, Wellpath cannot be found liable under Section 1983 on the basis of respondeat superior and Murphy has failed to allege any facts which would establish an affirmative link between Wellpath, and any inadequate medical care suffered by him (such as actual knowledge of the inadequate care /deliberate indifference, or a policy of denying medical care or tolerating inadequate medical care).

Murphy has asserted a claim against Fortune for violating his Eighth Amendment right as the result of her alleged deliberate indifference to his health and safety. Fortune, a social worker at the prison and Wellpath employee, met with Murphy on the same day the altercation with Vinton took place. During that meeting, Murphy relayed to her a concern about possible trouble

---

[5] For purposes of this decision, the Court will assume that Murphy had a serious medical need—a finding that for purposes of their motion to dismiss the Wellpath Defendants do not dispute.

with his cellmate. First, Murphy alleges that he told Fortune that he feared hurting someone else if there was trouble due to a conflict with his cellmate, not that he feared for his own safety. Therefore, his allegations fail to establish that she was aware that *he* faced a substantial risk of harm. Second, even if Murphy did tell her that he feared for his safety, at the conclusion of the meeting, Fortune did not ignore what Murphy had told her, rather she promptly filed a report about his concerns with the appropriate prison personnel. Thus, Murphy has failed to allege facts which would establish that Fortune failed to take reasonable steps to abate potential harm to him. Accordingly, Murphy has failed to allege a plausible claim against Fortune for deliberate indifference to his health and safety in violation of the Eighth Amendment, and the claims against her must be dismissed. *See Leite v. Bergeron*, 911 F.3d 47, 53 (1st Cir. 2018)(not every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety, rather officials' failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot be condemned as the infliction of punishment under the Eighth Amendment).

## Conclusion

**It Is Hereby Ordered That**:

1. Peter Pascucci, Scott Mello, And Michael Amaral's Motion To Dismiss Further Amended Complaint (Docket No. 60), is ***granted*** with prejudice; and

2. Medical Defendants' Motion To Dismiss Plaintiff's Second Amended Complaint (Docket No. 62) is ***granted***, with prejudice.

*/s/ Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES SENIOR DISTRICT JUDGE